318

## In re Anonymous Nos. 1 D.B. 77 and 34 D.B. 77

Disciplinary Board Docket nos. 1. D.B. 77 and 34 D.B. 77.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania.

HAMMERMAN, *Board Member,* May 27, 1981— Pursuant to Pa.R.D.E. 218(c)(5), the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above petition for discipline and petition for reinstatement.

### I. HISTORY, FINDINGS, AND CONCLUSIONS

This is a petition for reinstatement from inactive status. Respondent was admitted to practice law in Pennsylvania in 1953. He was engaged in private practice until placed on inactive status on March 27, 1978 by order of the Supreme Court of Pennsylvania. A petition for discipline had been filed on January 7, 1977. The said respondent had violated Disciplinary Rules of the Code of Professional Responsibility in that:

1. In or about March, 1971 Mr. and Mrs. [A] consulted respondent and requested that he effect the change of the names of Mrs. [A's] two sons, who

although the natural sons of Mr. [A], were born during Mrs. [A's] marriage to [B], from [B] to [A].

2. Respondent quoted a fee of $285 for said representation, and his total fee was paid by March 11, 1972.

3. From in or about March, 1971 to the present respondent has failed to take any other action on the [A's] behalf, and failed to file a report of intention to adopt, a petition for involuntary termination, a petition for adoption or any other documents to effect the adoption of Mrs. [A's] two sons.

4. From in or about March, 1971 to the present the A's have attempted to communicate with respondent at numerous times, and on the few occasions they were able to speak with him he merely stated that he was working on the adoption. However, these statements were false, and respondent has been neglecting the [A's] legal matter.

The petition averred that said respondent had violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

b. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

c. D.R. 7-101!A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

d. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

In addition, as a result of the complaint of the [A's], petitioner did duly recommend disposition to a reviewing member of a hearing committee, and said reviewing member directed that respondent

receive a private informal admonition by Disciplinary Counsel.

Respondent was duly notified to appear on August 25, 1976 to receive personally an admonition. Respondent declined to pick up said certified letter and failed to appear for the admonition scheduled for August 25, 1976. Respondent was personally served with a letter of notice to appear on September 9, 1976 for the same purpose, but he failed to appear or offer any explanation for his failure to appear. Respondent, therefore violated the following Disciplinary Rule of the Code of Professional Responsibility:

c. Section 87.52(b): dealing with neglect or refusal to appear for the purposes of informal admonition.

On or about April 3, 1973 [C], a minor, was struck by an automobile being driven by one [D]. On or about April 13, 1973 [C's] father consulted respondent and retained him to represent [C] in an action to recover damages for the personal injuries she sustained as a result of said accident. On or about April 3, 1975 respondent filed a praecipe for a summons in trespass on [C's] behalf.

A praecipe and rule to file a complaint in 20 days on behalf of defendant was filed and a copy of said praecipe and rule was forwarded to respondent. The attorney for defendant attempted to communicate with respondent to explain to him the urgency in having a complaint in trespass filed. However, respondent failed to answer his telephone calls and failed to file a complaint as a result of which a praecipe for judgment of non pros on behalf of defendant was duly filed.

The minor's father receiving the copy of judgment of non pros attempted to communicate with respondent and finally located him and personally

provided him with said notice. Although respondent promised to take care of the matter, again no action was taken by respondent. Said respondent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

b. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

c. D.R 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

d. D.R.7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

The matter was then referred to a hearing committee, which filed a report dated June 15, 1977 recommending that respondent be suspended from the practice of law for a period of one year. The committee also recommended that in applying for reinstatement, since respondent had a history of alcoholism that he submit medical evidence of his rehabilitation.

Thereafter, an additional petition for disciplinary action was filed against respondent under 34 D.B. 77 in which Disciplinary Counsel averred that respondent had violated certain Rules of the Code of Professional Responsibility:

On or about October 9, 1975 [E] consulted respondent and retained him to represent him in effecting a divorce. During his consultation [E] paid respondent $200 towards respondent's quoted fee of $585, and respondent agreed to represent [E] and to take all necessary action to effect said divorce.

Respondent filed the complaint in divorce on [E's] behalf, but failed to make payment of the sheriff's

fee of $11.55. Although [E] paid respondent an additional $200 toward his quoted fee of $585 on November 5, 1975 and an additional $100 on December 16, 1975, such sheriff's fee was not paid in spite of numerous requests to do so. No action had been taken by respondent on behalf of [E] towards effecting a divorce beyond filing a complaint in divorce. Said respondent had violated the following Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

b. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

c. D.R. 1-102(A)(6): A lawyer shall not engage in conduct that adversely reflects on one's fitness to practice law:

d. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

e. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of a client through reasonably available means;

f. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment entered into with a client for professional services;

g. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship.

On or about October 7, 1976, respondent was appointed master in divorce by the Court of Common Pleas of [ ] County in the matter of F. v. F.

Pursuant to said appointment, and on or about December 9, 1976 a hearing was convened at 5:00 p.m. in Room 603, [ ] County Court House, [ ], Pa., at which time respondent presided as master in divorce. Present also at said hearing were [F]

(plaintiff), [G] (counsel for plaintiff), and [H] (official court stenographer).

Respondent appeared at and conducted said hearing while in an intoxicated condition and while under the influence of alchohol.

At the conclusion of said hearing respondent approached [H], confronted her, and continuously requested that she accompany him and have a "drink" with him, in spite of the fact that she continuously refused his requests.

Petitioner believes and therefore avers that by his conduct as described in the foregoing paragraphs, said responsent has violated the following Disciplinary Rules of the Code of Professional Responsibility:

a. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

b. D.R. 1-102(A)(6): A lawyer shall not engage in conduct that adversely reflects on one's fitness to practice law.

Thereafter, on September 26, 1977, [I], attorney for respondent, moved to reopen the proceedings. The basis for the petition was that respondent had voluntarily committed himsef to [ ], an Alcoholism Rehabilitation Hospital.

When petitioner became aware that he was suffering from chronic and acute alcoholism, he sought treatment. He was hospitalized from August 8 to September 9, 1977 at an Alcoholic Rehabilitation Hospital, and again from February 3 to April 16, 1978 to another Alcoholic Rehabilitation Hospital. At these alcoholism rehabilitation hospitals he received intensive in-patient treatment that led to the advent of his recovery.

Since he was placed upon inactive status by order of this court, petitioner has been employed periodically by his brother. In order further to sustain his

family, he has liquidated some real estate holdings and, otherwise, has depended upon his wife's income.

Petitioner has been advised by experts in the field of alcoholism that he has progressed in his recovery to the point that his best interest would be served by seeking and obtaining reinstatement to active status and that his disease no longer poses a threat to the interests of prospective clients.

Disciplinary Counsel filed a petition praying that the court transfer respondent to inactive status because of physical disability for an indefinite period and until further order of the court pursuant to Pa.R.D.E. 301.

The hearing committee by letter of February 3, 1978, wrote to Diciplinary Counsel that during the course of a hearing held in this matter on February 3, 1978 they had come to the conclusion that respondent is suffering disability by reason of chronic alcoholism which makes it impossible to prepare an adqequate defense. The hearing committee, therefore, recommended respondent be placed upon inactive status which was affirmed by the order of Chief Justice Eagen on March 27, 1978.

Thereafter, on May 19, 1980 respondent filed a petition for reinstatement alleging that he had been completely rehabilitated and able to resume the practice of law.

Testimony was taken on December 18, 1980 before the hearing committee. [J] a manager for the Bell Telephone Company of Pennsylvania testified that he is a recovered alcoholic and a member of Alcoholics Anonymous. He stated that he has known respondent personally for about two and a half years and visited him at the alcoholic rehabilitation center where he had himself admitted in

1973. [J] found respondent to be a "despondent, lost person," but that respondent came out of the center a different person. Respondent became very involved in Alcoholics Anonymous and after a period of time got to know people and the witness believed that respondent is committed to the principles set forth in the program. [J] testified that he sees respondent at about two meetings a week.

[K], a production control and distribution manager for a women's apparel firm in [ ], testified that he was also a recovered alcoholic, a member of AA and had been one for six years. He also stated that he had gone to see respondent at the center. [K] testified that he sees respondent regularly at AA meetings and that he considers him "one of the winners," and respondent had been selected to be chairman of the Twelve Step Group in [ ], which is a demonstration of their faith in his rehabilitation.

Respondent's wife testified that when respondent was drinking, "It was like living hell, I guess we dreaded to see him come home. My stomach would get in knots. As a matter of fact, I wound up with ulcers, an ulcer" She testified that at the present time, "Well, we can live again. We can have guests in the home which we couldn't have when he was drinking because we didn't know how he would come home. It is more harmonious."

The hearing committee recommended that respondent be suspended from the practice of law for a period of three months, said suspension to be retroactive to and effective of March 27, 1978.

## II. CONCLUSION

Respondent is no longer disabled by the disease of alcoholism and is entitled to reinstatement to active status pursuant to Pa.R.D.E. 301.

### III. RECOMMENDATION

With respect to the petitions for discipline docketed at Nos. 1 D.B. 77 and 34 D.B. 77 held in abeyance during the period he was on inactive status, the Disciplinary Board recommends to your honorable court that respondent be suspended for a period of three months, said suspension to be retroactive to and effective March 27, 1978.

With respect to the petition for reinstatement the Disciplinary Board recommends to your honorable court that the petition for reinstatement be granted and respondent be reinstated to active status, upon payment of the necessary expenses incurred in the investigation and processing of the petition for reinstatement as set forth on the attached schedule pursuant to Pa.R.D.E. 218(e).

Messrs. Johnson, Pearlstine, Schiavo and Elliott did not participate in the adjudication.

### ORDER

And now, June 22, 1981, on consideration of the report and recommendations of the Disciplinary Board with respect to the petitions for discipline docketed at Nos. 1 D.B. 77 and 34 D.B. 77 held in abeyance during the period respondent was on inactive status and his petition for reinstatement, it is ordered:

(a) that respondent be suspended for a period of three months, said suspension to be retroactive to and effective March 27, 1978;

(b) that the petition for reinstatement is granted and respondent shall be and is hereby reinstated to active practice as a member of the Bar of the Commonwealth; and

(c) that the expenses incurred in the investigation and processing of the petition for reinstatement shall be paid by respondent.